1  Kurt Opsahl (SBN 191303)
   *kurt@eff.org*
2  Jason Schultz (SBN 212600)
   *jason@eff.org*
3  Corynne McSherry (SBN 221504)
   *corynne@eff.org*
4  Marcia Hofmann (SBN 250087)
   *marcia@eff.org*
5  ELECTRONIC FRONTIER FOUNDATION
   454 Shotwell Street
6  San Francisco, CA 94110
   Telephone: (415) 436-9333
7  Facsimile: (415) 436-9993

8

9  Attorneys for Plaintiff
   BRIAN SAPIENT

10            **UNITED STATES DISTRICT COURT**

11       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12              **SAN FRANCISCO DIVISION**

13  JOHN DOE A/K/A BRIAN SAPIENT,        )   No. 3:07-cv-02478 VRW
                                         )
14                       Plaintiff,      )   PLAINTIFF BRIAN SAPIENT'S
                                         )   MEMORANDUM OF POINTS AND
15       v.                              )   AUTHORITIES IN OPPOSITION TO
                                         )   DEFENDANTS' MOTION TO DISMISS
16  URI GELLER                           )
                                         )   Judge: The Hon. Vaughn R. Walker
17       and                             )   Date:   December 6, 2007
                                         )   Time:   2:30 p.m.
18  EXLOROLOGIST LTD.,                   )   Place:  Courtroom 6, 17th Floor
                                         )
19                       Defendants.     )
                                         )
20                                       )
                                         )
21
   _____
22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL HISTORY ................................................... 2

III. STANDARDS OF REVIEW.............................................................................. 4

    A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction ..................... 4

    B.  Motion to Dismiss for Lack of Personal Jurisdiction................................ 4

    C.  Motion to Dismiss for Failure To State A Claim....................................... 5

IV. ARGUMENT...................................................................................................... 5

    A.  This Court Has Subject Matter Jurisdiction Over Defendants' Violation of The DMCA Because The DMCA Is A Federal Copyright Law And The Violation Occurred Within the Territory of the United States At Defendants' Direction. ..................................... 5

    B.  Defendants Are Subject To Personal Jurisdiction In The State Of California. ..................... 7

        1.  Both Defendants are subject to specific jurisdiction in California by having purposely directed their unlawful DMCA notice and accusation of copyright infringement to California, where YouTube is headquartered and where the video at issue was hosted.. 7

        2.  Defendants Are Subject To Personal Jurisdiction In California Because They Have Been Served In California At Their Usual Place Of Business..................................... 13

    C.  Venue Is Proper In The Northern District Of California And This Case Is Not Appropriate For Dismissal Or Transfer Under 28 U.S.C. §§ 1404(A) Or 1406. ................... 15

        1.  Venue in the Northern District of California is Proper for Both Defendants. ............... 15

        2.  Defendants Have Failed To Meet Their Burden Showing That Transfer Is Appropriate 16

        3.  Defendants Have Failed To Carry Their Burden Of Showing That Venue Is Proper In The Transferee Court............................................................................................... 16

        4.  Even If Venue Were Proper In The Transferee Court, The Aggregate Considerations Of Convenience Weigh Against Transfer........................................................ 17

        5.  The "First To File Rule" Does Not Apply, As Only One Defendant Sued Plaintiff, The Issues Are Not Identical, And The Pennsylvania Suit Was Anticipatory, Filed In Bad Faith, And For Purposes Of Forum Shopping. ............................................... 18

    D.  There Is No Rule 9(b) Requirement For Claims Under 17 U.S.C. § 512(f)........................ 20

    E.  Defendants Cannot Move To Dismiss The Complaint Under Rule 12(B)(6) By Disagreeing

With The Facts As Alleged.............................................................. 20

F.   Sapient Has Properly Pled The Knowledge Standard For 512(F) Claims Under *Rossi* And *Diebold* ........................................................................................... 21

V.  CONCLUSION.............................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128 (S.D.N.Y. 1994) ................. 20

*Alltrade, Inc. v. Uniweld Prods, Inc.*, 946 F.2d 622 (9th Cir. 1991) ............................................. 18

*Armstrong v. Virgin*, 91 F.Supp.2d 628 (S.D.N.Y 2000) .................................................................. 6

*AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir.1996) ....................................... 4, 5

*B. J. McAdams, Inc. v. Boggs,* 426 F. Supp. 1091 (E.D.Pa 1977) .................................................. 17

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082  (9th Cir. 2000) ........................... 10

*Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2000) ........................................................ 4

*Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal.App.4th 1387 (1992) ................................................. 14

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) .................................................................. 5

*Blue Ribbon Pet Prods, Inc. v. Rolf C. Hagen (USA) Corp.*, 66 F.Supp.2d 454 (E.D.N.Y. 1999).... 6

*Boaz v. Boyle & Co.*, 40 Cal.App.4th 700 (1995) .......................................................................... 11

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706 (1972) .................................... 15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..........................................................7, 8, 10

*Burnham v. Super. Ct.,* 495 U.S. 604 (1990) ................................................................................. 14

*Calder v. Jones*, 465 U.S. 783 (1984) ..........................................................................8, 9, 10, 11

*Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765 (9th Cir. 1997) ....................................... 19

*Cody v. Ward*, 954 F.Supp. 43 (D. Conn. 1997) ........................................................................... 11

*Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986) ..................................................... 17

*Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979) ........................... 16

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280 (9th Cir. 1977) .................................... 15

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) .................................................................... 4, 5

*Dole Foods, Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ............................................................ 10

*Dudnikov v. MGA Entm., Inc.*, 410 F.Supp.2d 1010 (D. Colo. 2005) ........................................... 22

*Epstein v. Wash. Energy Co.*, 83 F.3d 1136 (9th Cir. 1996) ........................................................... 5

*Espindola v. Nunez*, 199 Cal.App.3d 1389 (1998) ....................................................................... 14

*Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086 (N.D.Cal. 2002) .......................... 17

*GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763  (W.D.N.Y. 1991) ......................................................................................................................................... 7

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ........................................................................... 18

*Haisten v. Grass Valley Medical Reimbursement Fund Ltd.,* 784 F.2d 1392 (9th Cir. 1986) ......... 11

*Hanson v. Denckla*, 357 U.S. 235 (1958) ....................................................................................... 7

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) .. 4, 10

*Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985) ............................................................ 16

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ...................................................................................... 16

*In re Netflix Antitrust Litigation*, 506 F.Supp.2d 308 (N.D.Cal. 2007) ......................................... 5

*Inselberg v. Inselberg*, 56 Cal.App.3d 484 (1976) ...................................................................... 11

*Keeton v. Hustler*, 465 U.S. 770 (1984) ....................................................................................... 10

*Khourie, Crew & Jaeger v. Sabek, Inc.*, 220 Cal.App.3d 1009 (1990) .......................................... 14

*Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871 (1990) .......................................................................... 5

*Med-Tec Iowa, Inc. v. Nomos Corp.*, 76 F.Supp.2d 962 (N.D.Iowa 1999) ................................... 20

*Menken v. Emm*, __ F.3d __, 2007 WL 2713139  (9th Cir. September 19, 2007) ................9, 11, 12

*Metzke v. May Dept. Stores Co.*, 878 F. Supp. 756 (W.D.Pa 1995) ................................................ 7

*Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) ....................................................... 11

*Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182 (9th Cir. 2002) ...................................... 9

*Online Policy Group v. Diebold, Inc.*, 337 F.Supp.2d 1195 (N.D.Cal. 2004) .........................passim

*Peterson v. Kennedy*, 771 F.3d 1244 (9th Cir. 1985) ...................................................................... 8

*Quill Corp. v. North Dakota By and Through Heitkamp*, 504 U.S. 298 (1992) ............................. 10

*Ravelo Monegro v. Rosa*, 211 F.3d 509 (9th Cir. 2000) ............................................................... 15

*Regents of the Univ. of Cal. v. Eli Lily and Co.*, 734 F.Supp. 911 (N.D. Cal. 1990) ..................... 15

*Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004) ........................................................20, 21, 22

*Royal Queentex Enter., Inc. v. Sara Lee Corp.* 2000 WL 246599 (N.D.Cal. March 1, 2000) ........ 16

*Saleh v. Titan Corp.*, 353 F.Supp.2d 1087 (S.D.Cal. 2004) ......................................................... 19

*Scholastic Entertainment, Inc. v. Fox Entertainment Group, Inc.*, 336 F.3d 982 (9th Cir. 2003) ..... 4

1  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004)................................. 8, 11

2  *Shalaby v. Newell Rubbermaid, Inc.*, 2007 WL 3144357 (N.D.Cal. October 24, 2007)................. 16

3  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ................................................ 5

4  *Subafilms, Ltd. v. MGM-Pathe Comms. Co.*, 24 F.3d 1088 (9th Cir. 1994)................................. 5, 6

5  *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138 (9th Cir. 1983) ............................... 4

6  *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364 (9th Cir. 1990)................................................ 19

7  *U.S. Indus., Inc. v. Procter & Gamble Co.*, 348 F.Supp. 1265 (S.D.N.Y. 1972)........................... 18

8  *Van Dusen v. Barrack*, 376 U.S. 612 (1964)................................................................................. 17

9  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)................................................... 20

10  *Walter v. Super. Ct.*, 178 Cal.App.3d 677 (1986) ....................................................................... 11

11  *Ward v. Follett Corp.*, 158 F.R.D. 645 (N.D.Cal. 1994) ....................................................... 11, 20

12  *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406   (9th Cir. 1977) ........................... 5

13  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208  (5th Cir. 1999)................................................. 10

14  *Yahoo!, Inc. v. La Lingue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)....
    ........................................................................................................................................8, 9, 10, 11

15
16  *Z-Line Designs, Inc. v. Bell'O Intern., LLC*, 218 F.R.D. 663 (N.D.Cal. 2003) .............................. 18

17  **Statutes**

18  17 U.S.C. § 107 .......................................................................................................................... 19

19  17 U.S.C. § 512 ...................................................................................................................passim

20  17 U.S.C. § 512(f).........................................................................................................20, 21, 23

21  28 U.S.C. § 1331............................................................................................................................ 4

22  28 U.S.C. § 1338............................................................................................................................ 4

23  28 U.S.C. § 1391 .......................................................................................................................... 15

24  28 U.S.C. § 1404(a).........................................................................................................16, 17, 20

25  28 U.S.C. §§ 1331 .......................................................................................................................... 6

26  28 U.S.C. §§ 1404(A) ................................................................................................................ ii, 15

27  Cal. Code Civ. Proc § 425.16 ...................................................................................................... 12

28  Fed. R. Civ. P. 12(b)(1)................................................................................................................. 5

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 5, 20

Fed. R. Civ. P. 9(b) ........................................................................................................ 20

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I.     INTRODUCTION

This case seeks to hold Uri Geller—the mentalist famous for seemingly bending spoons with his mind and a current celebrity performer on NBC's *Phenomenon* television show—along with his company, Explorologist Ltd., accountable for illegal attempts to silence one of their critics, Brian Sapient, through the misuse of United States copyright law.  Specifically, Defendants have sent a baseless copyright complaint, pursuant to the Digital Millennium Copyright Act (DMCA) Section 512, designed to shut down Sapient's First Amendment and Fair Use-protected efforts to foster public debate about Geller and his claims to paranormal abilities, resulting in the removal of a NOVA video clip that Sapient had posted on the well-known online video service, YouTube.  In the notice, Defendants incorrectly assert that eight seconds out of the fourteen-minute clip somehow infringe their copyright.  This view has no basis under the Copyright Act and violates Section 512(f) of the DMCA.  Because of Defendants' unlawful DMCA notice, Sapient's YouTube account was suspended, and all of his YouTube videos were not available for over two weeks.

Defendants attempt to evade responsibility for their improper takedown notice by raising an array of disputes with the Complaint, essentially asking this Court to hold that they can act with impunity, sending improper takedown notices that Americans may not, so long as they send them from England.  Once this Court peers through Defendants' smoke and mirrors, however, it is clear that this Court has subject matter jurisdiction over the action, personal jurisdiction over the Defendants, appropriate venue, and Sapient has properly pled his Complaint.

The Court has subject matter jurisdiction because Sapient alleges a federal cause of action under the Copyright Act, for a violation transmitted purposefully and directly to California. Defendants are subject to personal jurisdiction because there is specific jurisdiction for unlawful acts directed at the forum state, and the claim arises out of a notice sent to YouTube in California. Moreover, Defendants have been properly served in California, and have a long history of contacts with California, from the 1970s through today.

Venue is proper in California because U.S. law confers venue against aliens in any judicial

-1-

1  district, including the Northern District of California.  In an effort to further intimidate Sapient,

2  Explorologist filed a lawsuit in the Eastern District of Pennsylvania, one day before this litigation

3  was filed.  Transfer to Pennsylvania, however, is not appropriate, because Defendants have not met

4  their burden of showing personal jurisdiction over Uri Geller in Pennsylvania, nor have they shown

5  that transfer will serve the convenience of parties or witnesses.  The "first to file" rule is

6  inapplicable, because Explorologist's lawsuit was nothing more than an anticipatory lawsuit.

7      Finally, Sapient has properly pled his complaint under the Federal Rules of Civil Procedure.

8  Rule 9(b) does not apply to claims under the DMCA's misuse provision (17 U.S.C. § 512(f)), and,

9  when all facts are taken as true and all inferences raised in Sapient's favor, Sapient has alleged all

10  the necessary elements for his misuse claim and his declaratory relief claim.

11      According, as explained in detail below, this Court should deny Defendants' motion to

12  dismiss or transfer this litigation.

13  ## II.      FACTUAL AND PROCEDURAL HISTORY

14      Plaintiff Brian Sapient is a member of the Rational Response Squad ("RRS"), a group

15  dedicated to challenging irrational claims, including claims about psychic powers.  Complaint,

16  ¶ 12.  Through their Internet websites and electronic mailing lists, they stay in touch with

17  thousands of supporters on key issues of the day, such as the ongoing debate between evolution

18  and creationism. *Id.*  As part of their activities in this area, Sapient and RRS have also spoken out

19  against beliefs in magic, mysticism, and psychic abilities, arguing that rationality and logic explain

20  these phenomena. *Id.*

21      In the course of this work, Sapient and RRS have sharply criticized Geller, a world-

22  renowned performer who became famous in the 1970s for asserting that he has "mental powers"

23  that allow him to read minds and bend spoons.  Complaint, ¶ 14.  As part of that criticism, Sapient

24  uploaded a segment of video from the 1993 PBS program "NOVA: Secrets of the Psychics," onto

25  YouTube as "James Randi exposes Uri Geller and Peter Popoff,"[1] ("NOVA Segment"). *Id.*, ¶ 13.

26  In the fourteen-minute video clip, skeptic and magician James Randi examines Geller's

27

28  [1] http://www.youtube.com/watch?v=M9w7jHYriFo (last visited Nov. 11, 2007)

performances and proposes a rational explanation for the Geller's supposed paranormal abilities. *Id.*, ¶ 14.   YouTube is a video-sharing website where millions of Internet users post videos and make them available to others for viewing. *Id.*, ¶ 12; *see generally* http://www.youtube.com (last visited November 11, 2007).   Sapient and the RRS rely on YouTube to reach thousands of audience members and promote their activist messages and campaigns online. *Id.*

In response, on March 23, 2007, an agent of Defendants Explorologist and Geller demanded that YouTube take down the NOVA Segment pursuant to the DMCA, 17 U.S.C. § 512. *Id.*, ¶ 15.   As a result of Plaintiff's DMCA copyright infringement notice, Sapient's YouTube account was suspended. *Id.*, ¶ 17.   Recognizing that the company had no cognizable copyright claim, in March 2007, Sapient quickly submitted a counter-notification of noninfringement to YouTube under the DMCA, on March 27, 2007. *Id.*   However, as a result of Defendants' conduct, Sapient's account and all of his video postings (including, but not limited to, the NOVA Segment) remained unavailable for more than two weeks. *Id.*   On May 8, 2007, Sapient filed this case against Explorologist and Geller in the Northern District of California, seeking damages for misrepresentation and a declaratory judgment of noninfringment.

Anticipating this lawsuit as a result of pre-litigation correspondance, Explorologist filed its own case on May 7, 2007—just one day before Sapient filed this suit—in the Eastern District of Pennsylvania.   Defendant's Exhibit 5.   In that lawsuit, Explorologist relies upon British copyright law, claiming Sapient has infringed its United Kingdom copyright in an alleged video recording of a 1987 public Geller performance. *Id.*   Specifically, Defendants base their foreign copyright claims on the NOVA Segment including eight seconds of footage[2] in which a Dr. C.J. Hughes introduces Uri Geller to an audience, stating that Geller's "remarkable affinity for metal and his psychic abilities are well documented all over the world."   *See* NOVA Segment at 0:50 to 0:58.

On October 2, 2007, Geller and Explorologist moved to dismiss or to transfer this litigation to the Eastern District of Pennsylvania.

---

[2] These 8 seconds are the only copyrighted materials included in the NOVA Segment that Defendants claim to own.

### III.    STANDARDS OF REVIEW

#### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts have exclusive jurisdiction over "any civil action arising under any Act of Congress relating to ... copyrights." 28 U.S.C. § 1338.  They also have jurisdiction under the general federal question statute, 28 U.S.C. § 1331, when the complaint requires an interpretation of federal law, such as the copyright laws. *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 349 (9th Cir. 2000) (authorizing district courts to exercise jurisdiction if: (1) the complaint asks for a remedy expressly granted by the Copyright Act; (2) the complaint requires an interpretation of the Copyright Act; or (3) federal principles should control the claims).  This is essentially a reiteration of the "well-pleaded complaint" rule that federal jurisdiction exists only when a federal question is presented on the face of a properly pleaded complaint. *Scholastic Entertainment, Inc. v. Fox Entertainment Group, Inc.*, 336 F.3d 982, 986 (9th Cir. 2003).  A federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if the claim "appears to be immaterial and made solely for the purpose of obtaining jurisdiction," or "such a claim is wholly insubstantial and frivolous." *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 140 (9th Cir. 1983).

#### B.    Motion to Dismiss for Lack of Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003).  However, plaintiff need only "make … a prima facie showing of jurisdictional facts to withstand a motion to dismiss." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (per curiam) (internal citations omitted).

In assessing plaintiff's showing, the court may consider evidence presented in affidavits and other evidence procured through the discovery process.  But when the court acts on the motion without holding an evidentiary hearing, plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Unocal*, 248 F.3d at 922; *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).  If not squarely controverted,

1    plaintiff's version of the facts must be taken as true, and conflicts between the facts contained in

2    the parties' affidavits should be resolved in favor of plaintiff. *Unocal*, 248 F.3d at 922; *AT&T*, 94

3    F.3d at 588. In addition, a court may permit discovery to aid in determining whether it has *in*

4    *personam* jurisdiction. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24

5    (9th Cir. 1977).

6         **C.**     **Motion to Dismiss for Failure To State A Claim**

7       A motion to dismiss under Rule 12(b)(6) tests for legal sufficiency of the claims alleged in

8    the complaint. *In re Netflix Antitrust Litigation*, 506 F.Supp.2d 308 (N.D.Cal. 2007). To defeat

9    such a motion, the factual allegations must simply be "enough to raise a right to relief above the

10    speculative level…on the assumption that all the allegations in the complaint are true (even if

11    doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). "All allegations

12    of material fact are taken as true and construed in the light most favorable to plaintiff." *Epstein v.*

13    *Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Further, the Court must presume that

14    general allegations embrace those specific facts that are necessary to support the claim." *Lujan v.*

15    *Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990).

16                 **IV.**    **ARGUMENT**

17        **A.**     **This Court Has Subject Matter Jurisdiction Over Defendants' Violation of**

18             **The DMCA Because The DMCA Is A Federal Copyright Law And The Violation Occurred Within the Territory of the United States At Defendants' Direction.**

19       Defendants start their argument by contending that this Court lacks subject matter

20    jurisdiction over Count I of Sapient's Complaint. To support this, Defendants attempt to apply the

21    longstanding presumption against the extraterritorial application of United States Copyright law for

22    actions occurring "wholly outside the United States." Motion at 4 (citing *Subafilms, Ltd. v. MGM-*

23    *Pathe Comms. Co.*, 24 F.3d 1088, 1095 (9th Cir. 1994)). *Subafilms*, however, was not a case

24    addressing subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); rather, it was a case

25    addressing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

26    *Subafilms*, 24 F.3d at 1089; *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89

27    (1998) (whether or not plaintiff has stated a claim for relief does not implicate existence of subject

28

1    matter jurisdiction). Defendants do not appear to raise any proper subject matter jurisdiction

2    arguments in their motion, nor could they as jurisdiction over copyright-related, federal question

3    and declaratory judgment actions are squarely within the purview of this Court. *See* 28 U.S.C. §§

4    1331 (federal question), 1338 (copyright), 2291 (declaratory judgment).

5         Nonetheless, this argument is both legally and factually inadequate. In *Subafilms*, the Ninth

6    Circuit dismissed claims against several companies who authorized extraterritorial acts that would

7    have infringing under U.S. copyright law had they been domestic. There, as Defendants note, the

8    Court held that domestic authorization of wholly extraterritorial infringing acts is beyond the scope

9    of U.S. copyright law. *Id.*

10        Here, however, Sapient has alleged exactly the opposite. Sapient alleges that Defendants

11   transmitted their DMCA notice purposefully and directly from a foreign country to the United

12   States headquarters of YouTube, Inc. in San Bruno, California. Complaint ¶¶ 15, 20-21; *see also*

13   Declaration of Kurt Opsahl ("Opsahl Decl."), ¶ 22, Ex. P (YouTube Terms of Use § 8 (requiring

14   copyright complaints to be sent to YouTube's headquarters located in San Bruno, California);

15   Complaint, Exhibit A/Defendants' Exhibit 6 (a form, signed by Defendants, listing YouTube's

16   address). The knowing communication of material misrepresentations to a U.S. online service

17   provider via a DMCA notice is a violation of U.S. law under Title 17, Section 512(f). Thus, U.S.

18   federal courts have jurisdiction over this case.

19        Defendants lean heavily on the fact that their notice was authorized and sent from the

20   United Kingdom and not from within the United States. However, the location of the sender does

21   not alter the location of the violation: San Bruno, California—in this judicial district, and well

22   within the borders of the United States. Redress of that violation thus is properly the concern of

23   federal courts. *See Armstrong v. Virgin*, 91 F.Supp.2d 628, 634-36 (S.D.N.Y. 2000) (foreign

24   authorization of acts that lead to infringement within U.S. borders is subject to jurisdiction in U.S.

25   courts); *Blue Ribbon Pet Prods, Inc. v. Rolf C. Hagen (USA) Corp.*, 66 F.Supp.2d 454, 462-64

26   (E.D.N.Y. 1999) (same); 3 NIMMER ON COPYRIGHT § 12.04[A][3][b] at 12-97 (2005) (noting,

27   under *Subafilms*, that while U.S. authorizers of infringement abroad are not subject to U.S.

28   copyright law, "activity undertaken abroad that knowingly induces [violations of the U.S.

copyright law] within the United States can be actionable in federal court."). *See also GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763, 773 (W.D.N.Y. 1991) (finding subject matter jurisdiction over foreign defendant even though infringing labels were applied in Germany because labels were specifically designed for marketing in the United States, bottles were packaged for shipment to the Unites States, and the bottler sold them to a company which imported them to the United States); *c.f. Metzke v. May Dept. Stores Co.*, 878 F. Supp. 756, 760-61 (W.D.Pa 1995) (holding that defendant could be held liable under U.S. law for foreign third party's infringement "if it knew or should have known that [third party] Maru Fung's copies of Ms. Metzke's designs would be distributed by non-May retailers in the United States.").

In Count I, Sapient alleges that Defendants violated U.S. law by knowingly making material misrepresentations in a DMCA notice to YouTube, which is located in San Bruno, California. Under federal copyright law, those misrepresentations are subject to jurisdiction of U.S. federal courts.[3]

**B.    Defendants Are Subject To Personal Jurisdiction In The State Of California.**

Defendants' second attempt to evade adjudication in this Court focuses on personal jurisdiction, arguing that neither Defendant Geller nor Defendant Explorologist are subject to jurisdiction in the State of California. As explained below, both of these arguments fail.

**1.    Both Defendants are subject to specific jurisdiction in California by having purposely directed their unlawful DMCA notice and accusation of copyright infringement to California, where YouTube is headquartered and where the video at issue was hosted.**

Defendants acknowledge, as they must, that a party can be subject to specific jurisdiction on claims related to his activities or contacts in that state. Motion at 8 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)). A court may exercise specific jurisdiction over a foreign defendant if his or her contacts with the forum give rise to the cause of action before the court. The question is whether the cause of action arises out of or has a substantial connection with that activity. *Hanson v. Denckla*, 357 U.S. 235, 250-253 (1958).

---

[3] Defendants do not raise a subject matter objection to Count II (declaratory relief). However, even if they did, the same basis for jurisdiction described for Count I would apply to Count II.

The Ninth Circuit has established a three-part test to evaluate the nature and quality of a defendant's contacts so as to determine the availability of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).   If the plaintiff succeeds in satisfying both of the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476-78).

      **(a)**    **Defendants purposefully directed their improper DMCA notice and copyright infringement accusation to California with the intent and effect of removing the video hosted there from the Internet.**

In tort cases such as this one, the Ninth Circuit has held that the proper inquiry for whether a defendant "purposefully directs his activities" at the forum state stems from applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. *Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).[4]

In such cases, the Ninth Circuit has construed *Calder*'s effects test to impose three requirements: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*; *Yahoo!, Inc. v. La Lingue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (same).   Moreover, in a specific jurisdiction inquiry, courts in the Ninth Circuit "consider the extent of the defendant's contacts with the forum and the degree to which the

---

[4] Defendants' citation to *Peterson v. Kennedy*, 771 F.3d 1244, 1262 (9th Cir. 1985) on this issue is inapposite, as it only pertains to the "purposeful availment" test for contract cases and not the *Calder* "effects" test for tort cases.  *See Schwarzenegger*, 374 F.3d at 802.

1  plaintiff's suit is related to those contacts. 'A strong showing on one axis will permit a lesser

2  showing on the other. A single forum state contact can support jurisdiction if the cause of action

3  arises out of that particular purposeful contact of the defendant with the forum state.' " *Menken v.*

4  *Emm*, __ F.3d __, 2007 WL 2713139 at *5 (9th Cir. September 19, 2007) (quoting *Yahoo!*, 433

5  F.2d at 1210).

6      Here, Sapient has pled and Defendants do not contest that they intentionally transmitted,

7  via fax and email, communications accusing Sapient of copyright infringement to YouTube's

8  California headquarters concerning a video he had posted there on YouTube's computer servers.[5]

9  Complaint ¶¶ 15-17. Nor do they contest that they did so with the express purpose of removing

10  Sapient's video from YouTube's servers with the understanding that their acts could (and as it

11  turns out did) lead to the suspension of Sapient's entire YouTube account. *Id.*, ¶¶ 16-17. Counts I

12  and II of Plaintiff's Complaint arise out of these specific, directed actions toward the State of

13  California and thus easily satisfies all three requirements of the *Calder / Yahoo!* test for purposeful

14  direction.

15      Defendants attempt to sidestep these undisputed facts and allegations by claiming they did

16  not "direct any activity at a California resident," arguing that because Sapient lives in

17  Pennsylvania, their purposeful direction of illegal activities at California should be excused.

18  Motion at 9. Sapient's location, however, is not controlling. Section 512(f) of the DMCA makes it

19  a violation of federal law to knowingly misrepresent to a "service provider" (as defined in Section

20  512(k)) that material stored on the provider's servers is infringing. 17 U.S.C. § 512(f), (k).

21  Defendants' DMCA notice intentionally targeted both California as a forum and as the location

22

23  [5] Defendants attempt to argue that Defendant Geller "did not know about, let alone authorize, any
    act alleged to have occurred in California." Motion at 6. This directly contradicts Sapient's

24  Complaint. Complaint ¶ 15. On a motion to dismiss, all allegations in the complaint must be taken
    to be true; therefore, Defendants' factual disagreement with the complaint is of no moment here.

25  *See* Section III.C, *supra*. Moreover, the Ninth Circuit has held that acts of agents are ordinarily
    imputed to their principal for purposes of personal jurisdiction. *Ochoa v. J.B. Martin & Sons*

26  *Farms, Inc.*, 287 F.3d 1182, 1189 (9th Cir. 2002). And, since Geller specifically authorized Shipi
    Shtrang as his agent for the DMCA takedown notices sent to YouTube and Shtrang sent such a

27  notice, he is subject to California's jurisdiction for the consequences of that act. *See* Complaint,

28  Ex. A, Defendants' Exs. 2, 6.

where the harm, i.e. the misrepresentation to the service provider and the removal of the video, was intended to occur.

This meets the "effects test" for personal jurisdiction, as does the fact that California was the site of the alleged infringement subject to Count II.  *See Dole Foods, Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) (finding foreign defendants subject to California jurisdiction because they directly communicated with California and had specific intent to cause injury there by means of those communications); *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087-88 (9th Cir. 2000) (finding personal jurisdiction in California appropriate over Georgia defendant under *Calder* because single letter sent to Virginia was an intentional act expressly aimed at inflicting harm in California).  Furthermore, Plaintiff's residence in another forum is irrelevant, as long as some small portion of his harm was suffered in the forum state.  *Keeton v. Hustler*, 465 U.S. 770, 773, 780 (1984); *Yahoo!*, 433 F.3d at 1207.

Nor can Defendants escape personal jurisdiction by claiming that their activities were limited to faxes and emails initiated from London and not California.  *See Quill Corp. v. North Dakota By and Through Heitkamp*, 504 U.S. 298, 308 (1992) ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.  So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.") (quoting *Burger King*, 471 U.S. at 476); *Yahoo!*, 433 F.3d at 1207-09 (personal jurisdiction established against French entities based on communication of cease-and-desist letters plus copies of foreign court orders sent to California); *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130-31 (9th Cir. 2003) (finding, *inter alia*, that regular communication via phone, fax and mail with California entity supported specific jurisdiction over claim related to communications); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211-15 (5th Cir. 1999) (finding jurisdiction where foreign attorney sent letters, faxes, and made phone calls to Texas which contained fraudulent misrepresentations and thereby caused foreseeable harm in the forum); *Haisten v. Grass Valley Medical Reimbursement*

1   *Fund Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986) (finding physical contact with forum state not

2   necessary for jurisdiction); *Cody v. Ward*, 954 F.Supp. 43, 47 (D. Conn. 1997) (finding fraudulent

3   representations made in email messages and phone calls from California to Connecticut sufficient

4   to establish Connecticut jurisdiction over California defendant).[6]

5                 **(b)    Plaintiff's Claim Arises out of Defendants' Forum Activities**

6          To determine whether a claim arises out of forum-related activities, Ninth Circuit courts

7   apply a "but for" test. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). Hence,

8   all Sapient must allege is that he would not have suffered an injury "but for" Defendants' forum-

9   related conduct. *Id.*; *see also Menken*, 2007 WL 2713139 at *5. Sapient has alleged that he was

10  harmed as a direct and proximate result of Defendants' communications to YouTube in California.

11  Complaint ¶ 23. These harms include the loss of his video, his free speech rights, and the

12  suspension of his account. *Id.,* ¶¶ 15-17. Also, but for their accusation of infringement directed

13  toward California and YouTube, there would be no need for Count II, the declaratory judgment

14  action for non-infringement. Thus, but for Defendants' forum-related activity, Sapient would not

15  have suffered injury. Sapient has satisfied the second prong of the "effects test."

16                **(c)    Defendants Have Failed To Provide Any Evidence Or**
17                         **Substantive Argument That Jurisdiction Over Them Is**
                           **Unreasonable.**

18         As noted above, now that Plaintiff has established the first two prongs of the specific

19  jurisdiction test (purposeful direction of activities to the forum and relation between those activities

20  and the claim), the burden shifts to the Defendants to prove the exercise of jurisdiction would be

21  unreasonable. *Schwarzenegger*, 374 F.3d at 802.

22

23

24  [6] Defendants' three citations on this issue are inapposite. First, *Inselberg v. Inselberg*, 56
    Cal.App.3d 484 (1976) was a pre-*Calder/Yahoo!* case and thus has little relevance to the proper
25  application of the "effects" test. Second, while *Walter v. Super. Ct.*, 178 Cal.App.3d 677 (1986)
    did address *Calder* and phone calls to California, it found that those calls were not sufficiently
26  relevant to the claim at issue to establish jurisdiction. Here, Sapient's claim arises directly from
    Defendants' communications. Finally, *Boaz v. Boyle & Co.*, 40 Cal.App.4th 700 (1995) is
27  distinguishable because the court there did not discuss any "effects test" and also found that no
    harm had occurred in California as a result any alleged contacts. *Id.* at 717-18.
28

The Ninth Circuit has established seven factors on which a Defendant can offer evidence of unreasonableness: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Menken*, 2007 WL 2713139 at *5.

Here, Defendants have failed to even mention, let alone address, six of these seven factors. *See* Motion at 10. The lone factor they do address, California's interest in adjudicating the dispute, is dealt with in a single assertion, unsupported by citation to law or evidence, that California has no such interest.[7] Defendants then repeat their arguments as to the first two prongs, namely that the acts occurred in England, that they have no substantial contacts with California, and their factual dispute contending that Geller never knew about or authorized the illegal acts. As noted above, these arguments are without merit; moreover, they are irrelevant to the "reasonableness" prong of the specific jurisdiction test. Defendants have thus failed to meet their burden and show that jurisdiction would be unreasonable.

Moreover, Sapient has provided evidence that shows that jurisdiction would be eminently reasonable. In their motion, Defendants claim that they have no substantial contact with California. Motion at 2-3, 8. This is simply untrue. Not only has Geller had a long history with California, *see* Opsahl Decl. at ¶¶ 3-21, since the filing of his Complaint, Sapient has learned that Geller is currently present in California, while producing, promoting, and starring in a major television show with NBC Universal called *Phenomenon*. The show, "created" by Defendant Explorologist, is filmed live in Los Angeles, California and filming will continue for the next month. Opsahl Decl. ¶¶ 4, 14-21. In fact, in the course of promoting *Phenomenon*, Geller has

---

[7] To the contrary, California has an abiding interest in protecting YouTube videos from improper takedown notices. *See* Cal. Const. art I, § 2(a) (protecting free speech); *see also* Cal. Code Civ. Proc § 425.16 ("The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.").

written extensively in his Internet diary, or "blog," including chronicling his contacts with and presence in California, and including photographs of him in front of California billboards advertising the show and spending time with his daughter, who resides in Los Angeles. *See id.*, ¶¶ 2, 23-26. Indeed, Geller's blog itself is hosted by a California company. *Id.* ¶¶ 25, 27.  Moreover, it also appears that *Phenomenon* is already slated to be renewed for second season with NBC, which will require both Geller and Explorologist to continue residing and transacting business within California on a regular basis. *Id.*, ¶ 4 and Ex. B.  These facts show that it is not unreasonable for this Court to exercise jurisdiction over Geller and Explorologist.

After these three attempts, copies of the summons and complaint were left at Defendants' studio after informing the recipient of the nature of the documents and the importance of delivering them directly to Geller.  *Id.*  Copies were then sent by first class mail to Defendants at Tribune Studios, Defendants' place of business.  Zimmerman Decl., ¶ 5.

### 2. Defendants Are Subject To Personal Jurisdiction In California Because They Have Been Served In California At Their Usual Place Of Business.

Personal jurisdiction also exists over the Defendants because they were properly served in California.  While Defendants were properly served at the beginning of this litigation, after reading Defendants' Motion claiming a lack of jurisdiction in California, in an abundance of caution, Plaintiff re-served Defendants in California.  While they were not served directly, they were served in accordance with the requirements of California Code of Civil Procedure Section 415.20.

Section 415.20(b) permits service by substitute means if "the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served."  In that event, a party may be served by (1) leaving a copy of the summons and complaint at the person's usual place of business (2) in the presence of an adult apparently in charge of the office (3) who is informed of the contents of the served documents, followed by (4) mailing a copy of the summons and complaint by first class mail to party to be served at the place of business.  *See* Cal. Code Civ. Proc § 415.20.

Sapient has met all of the requirements for substitute service on Defendants.  While Defendants accepted service through his counsel early in this litigation, Defendants insist that they

1    are not "jurisdictionally 'present' in the State of California." Motion at 7. Given this argument,

2    and noting that Defendants' live television show is currently being broadcast live from California,

3    Plaintiff located the studios at which the show *Phenomenon* is filmed so as to conduct personal

4    service while Defendants were, in fact, present in California. *See* Declaration of Matthew

5    Zimmerman (Zimmerman Decl.), ¶¶ 2, 3. Two attempts were made to serve Geller (on behalf of

6    himself and his company) at this location, but each time the attempt was halted by studio security,

7    which did not let the process server proceed. Affidavit of Reasonable Diligence of Ricardo Paz at

8    p.1. A third attempt was made to serve Geller at his hotel, but the process server was similarly not

9    permitted to complete this task. *Id*.

10    After these three attempts, copies of the summons and complaint were left at Defendants'

11    studio after informing the recipient of the nature of the documents and the importance of delivering

12    them directly to Geller. *Id*. Copies were then sent by first class mail to Defendants at Tribune

13    Studios, Defendants' place of business. Zimmerman Decl., ¶ 5.

14    Plaintiff's repeated attempts to find and serve Mr. Geller constitute reasonable diligence

15    under section 415.20(b), and Plaintiff properly met the remaining requirements to effect substitute

16    service under the statute. *See e.g., Khourie, Crew & Jaeger v. Sabek, Inc.*, 220 Cal.App.3d 1009,

17    1013 (1990) ("Saberi's argument that the service of process failed because Woods did not

18    somehow manage to get past the locked door and into the office is unpersuasive. The evident

19    purpose of section 415.20 is to permit service to be completed upon a good faith attempt at

20    physical service on a responsible person...."); *Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal.App.4th

21    1387, 1391-92 (1992) ("Ordinarily ... two or three attempts at personal service at a proper place

22    should fully satisfy the requirement of reasonable diligence and allow substituted service to be

23    made.") (quoting *Espindola v. Nunez*, 199 Cal.App.3d 1389 (1998)).

24    Since the Defendants were re-served in the forum state, all of Defendants' jurisdictional

25    arguments have become moot—they are subject to personal jurisdiction here "without regard to

26    whether the defendant[s were] only briefly in the State or whether the cause of action was related

27    to [their] activities there." *Burnham v. Super. Ct.,* 495 U.S. 604, 629 (1990); *see also id.* at 620-

28    621 (Opn. of Scalia, J.: jurisdiction bases on physical presence alone constitutes due process), *id.* at

630-631 (Opn. of Brennan, J.: "[b]y visting the forum State, the transient defendant actually avails himself of significant benefits provided by the State.").[8]

**C.    Venue Is Proper In The Northern District Of California And This Case Is Not Appropriate For Dismissal Or Transfer Under 28 U.S.C. §§ 1404(A) Or 1406.**

Defendants have no basis to move to dismiss or transfer this case on grounds of *forum non conveniens*[9] and improper venue to the Eastern District of Pennsylvania.  Motion at 10.  To the contrary, venue in this District is proper and transfer is inappropriate because Defendants have failed to meet their burden to show inconvenience and that either Defendant is subject to personal jurisdiction in Pennsylvania.

**1.    Venue in the Northern District of California is Proper for Both Defendants.**

In his Complaint, Sapient alleges that venue in this case in proper in the Northern District of California under 28 U.S.C. § 1391.  The Supreme Court has held that Section 1391(d) confers venue against aliens in any judicial district in the United States.  *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 708 (1972), *superseded by statute on other grounds as stated in Regents of the Univ. of Cal. v. Eli Lily and Co.*, 734 F.Supp. 911 (N.D. Cal. 1990) (Section 1391(d) derives from a tradition going "back to the beginning of the Republic" under which "suits against aliens were left unrestricted, and could be tried in any district, subject only to the requirement of service of process.").  Defendants admit that they are both aliens based in England.  Motion at 12;

---

[8] As detailed in the Opsahl Declaration, Plaintiffs have uncovered evidence showing that Geller has enjoyed extensive contacts with California since at least the early 1970s, including television appearances, book signings, classes at the Learning Annex, living in an apartment in Palo Alto, and, most recently, his work on *Phenomenon* (which was "created" by Defendant Explorologist).  Opsahl Decl. at ¶¶ 3-21.  Accordingly, Sapient respectfully requests that, if the Court is not inclined find special jurisdiction at this time, the Court allow discovery on the question of general jurisdiction prior to a final determination.  Such discovery should ordinarily be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).

[9] Federal courts treat a motion for *forum non conveniens* within the territory of the United States as a motion to transfer under 28 U.S.C. § 1404(a).  *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512-513 (9th Cir. 2000).  The doctrine of *forum non conveniens* survives in federal court only when the alternative forum is in a foreign country.  *Id.*  Since Defendants ask for a transfer to the Eastern District of Pennsylvania, Sapient presumes that Defendants meant a transfer under Section 1404(a).

-15-

Shtrang Decl. ¶ 2; Geller Decl. ¶¶ 2-3.  Therefore, under Section 1391(d), venue in this case is proper.[10]

> **2.    Defendants Have Failed To Meet Their Burden Showing That Transfer Is Appropriate**

While venue is proper in this District, courts have discretion under Sections 1404(a) to transfer cases for the convenience of parties and witnesses and when the interests of justice so dictate.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 278-79 (9th Cir. 1979).  However, the burden to justify transfer is on the moving party.  *Id.*

District courts use a two-step analysis to determine whether a transfer is proper.  Step one considers the threshold question of whether the case might have been brought in the forum to which the transfer is sought.  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).  If it concludes that the venue is proper in the transferee court, the district court then balances the plaintiff's interest to freely choose a litigation forum against the aggregate considerations of convenience of the defendants and witnesses and the interest of justice. *Id.*

> **3.    Defendants Have Failed To Carry Their Burden Of Showing That Venue Is Proper In The Transferee Court**

As an initial matter, Defendants' motion to transfer fails for at least one simple reason: Defendants offer no admissible evidence that either Defendant is subject to personal jurisdiction in Pennsylvania.

Section 1404(a) requires that any transfer requested be to a district in which the case "might" have been brought.  28 U.S.C. § 1404(a); *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *Commodity Futures*, 611 F.2d at 279.  Thus, a party seeking transfer must show that the desired forum is one where complete personal jurisdiction over all defendants exists.  *Shalaby v. Newell Rubbermaid, Inc.*, 2007 WL 3144357, at *4 (N.D.Cal. October 24, 2007); *Royal Queentex Enter., Inc. v. Sara Lee Corp.* 2000 WL 246599, at *3 (N.D.Cal. March 1, 2000).[11]  Here, Defendants have

---

[10] Venue is also proper under Section 1391(b), as a substantial part of the events giving rise to the claim at issue occurred in this judicial district.  Complaint, ¶¶ 15-17 (DMCA notice sent to this judicial district, where YouTube, Inc. is located and where contested video was hosted).

[11] This requirement for complete jurisdiction cannot be cured by Defendants' consent or waiver.  *Hoffman*, 363 U.S. at 342.

not even bothered to put forth either argument or evidence as to whether there is personal jurisdiction over both parties in the Eastern District of Pennsylvania.

### 4. Even If Venue Were Proper In The Transferee Court, The Aggregate Considerations Of Convenience Weigh Against Transfer

Even if venue is proper, a court may transfer any civil action to another jurisdiction where it may have been brought "for the convenience of parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a) (1996); *see also Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Again, the moving party bears this burden. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). Analysis of suitability for transfer involves private factors, such as the ease of access to proof, costs, availability of compulsory process for unwilling witnesses, and other practical considerations for an efficient and expeditious trial. *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d at 843 (Mont. 1986). In addition, it considers public factors such as the local public and jury pool's interest in localized controversies. *Id.*

Sapient has not completed his investigation in this case; indeed, discovery has not yet begun. However, Sapient anticipates that he will need the testimony at trial of at least one witness, if not more, from YouTube, Inc. *Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1092-3 (N.D.Cal. 2002) (quoting 15 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3851 at 264) ("If the forum chosen by plaintiff will be most convenient for the witnesses, this is a powerful argument against transfer."). Specifically, Sapient anticipates that he may call the YouTube employee who corresponded with Shtrang and perhaps also witnesses from YouTube to discuss their Terms of Use, their Content Control tool, and other various aspects of the site. Since all of those witnesses are non-parties, it would not only be far more convenient for them if the trial were here in the Northern District, but in fact essential for the case to be here so that they would be within the 100-mile reach of the Court's subpoena power under Rule 45.[12] 15 Wright, Miller & Cooper, *supra* at 267-68; *B. J. McAdams, Inc. v. Boggs,* 426 F. Supp. 1091, 1104 (E.D.Pa 1977) (transfer refused where plaintiff asserted that compulsory

---

[12] Sapient notes, that at this time, it is unclear how willing these witnesses will be to testify; however, it is logical that they would be more willing to testify if the location of the proceeding is in San Francisco, a mere thirteen miles from YouTube's headquarters in San Bruno.

1   process might be necessary to secure the live testimony of witnesses who could not be compelled

2   to testify in the proposed transferee district); *U.S. Indus., Inc. v. Procter & Gamble Co*., 348

3   F.Supp. 1265, 1268-9 (S.D.N.Y. 1972) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508

4   (1947)).  Thus, based on the convenience of the witnesses and the ability to compel testimony at

5   trial, this Court should deny transfer.

       **5.**     **The "First To File Rule" Does Not Apply, As Only One Defendant Sued Plaintiff, The Issues Are Not Identical, And The Pennsylvania Suit Was Anticipatory, Filed In Bad Faith, And For Purposes Of Forum Shopping.**

      This Court should also deny Defendants' request to transfer this litigation to the Eastern

District of Pennsylvania under the "first to file" rule.  Under this rule, courts look at three factors:

(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the

issues.  *Alltrade, Inc. v. Uniweld Prods, Inc*., 946 F.2d 622, 625 (9th Cir. 1991).  In particular, the

Ninth Circuit has instructed courts not to grant first-to-file motions where the first-filed action was

anticipatory, in bad faith, or for the purposes of forum shopping. *Id*. at 628.

      "A suit is anticipatory when the plaintiff filed upon receipt of specific, concrete indications

that a suit by defendant was imminent." *Z-Line Designs, Inc. v. Bell'O Intern., LLC*, 218 F.R.D.

663, 665 (N.D.Cal. 2003).  "Such anticipatory suits are disfavored because they are examples of

forum shopping." *Id*.  That was exactly the situation here.  On April 13, 2007, counsel for Sapient

sent Geller a letter notifying him of his violation of Section 512(f) and demanding express

settlement terms or else face imminent legal action.  Opsahl Decl., ¶ 29.  In response, counsel for

Defendants wrote back inquiring as to several facts and justifications for the suit. *Id*., ¶ 30.

Sapient's counsel responded to this inquiry on April 23, 2007, providing the requested explanation.

*Id*.  An exchange of letters and emails followed, cumulating in Defendants' counsel requesting a

phone conference – but Defendant's counsel said he was unavailable until May 7. *Id*., ¶¶ 31-32.

Sapient's counsel granted this request, but explained that Sapient would have no choice but to file

this suit if a resolution was not found. *Id*. at ¶ 31.  The conference call happened on May 7 (the

dispute was not resolved), and Sapient only found out later that Defendants' counsel had filed the

Pennsylvania action on the same day as the conference call. *Id*.  Sapient immediately filed his suit

1   the very next day. *Id.*  This chronology clearly shows that the Pennsylvania suit was anticipatory,

2   in bad faith, and filed for the purposes of forum shopping.[13]

3          Moreover, all three *Alltrade* factors weigh against granting a first-to-file motion.

4   Specifically, while Defendant Explorologist did sue Sapient in the Pennsylvania action, Defendant

5   Geller did not join the proceeding.  Moreover, as noted above, the fact that Geller is not a party to

6   the Pennsylvania action raises serious questions as to whether that Court would have jurisdiction

7   over him.  *See Decker Coal*, 805 F.2d at 843-4 (concluding that the first-to-file rule was applicable

8   because the court had jurisdiction over all of the parties); *see also, e.g., Alltrade*, 946 F.2d at 627

9   (finding questionable jurisdiction in first-filed case weighed against dismissing second-filed case);

10  *Saleh v. Titan Corp.*, 353 F.Supp.2d 1087, 1091-2 (S.D.Cal. 2004) (noting the need to have

11  jurisdiction over all parties in order to invoke first-to-file rule).

12         Moreover, the issues in the two cases are not identical.  The main issues in the case before

13  this court are whether Defendants have violated the anti-abuse provision of the Digital Millennium

14  Copyright Act's notice-and-takedown provision, codified in Title 17, Section 512(f), and whether

15  or not Sapient's conduct is lawful under United States copyright law as non-infringing.  Complaint

16  ¶¶ 18-27.  In the Pennsylvania action, Explorologist has sued Sapient for violations of British

17  Copyright Law, commercial disparagement,[14] and use of likeness.  Thus, out of the five possible

18  causes of action, the only arguable similarities are between two—the request for Declaratory

19  Judgment of non-infringement under U.S. law and the allegations of infringement under British

20  law.  Yet, as Defendants' own motion concedes, there are substantial differences between British

21  and U.S. Copyright Law, most particularly in the application of the First Amendment and Fair Use

22  doctrines.  *See* Motion at 5; *see also* 17 U.S.C. § 107.  Thus, none of these claims truly overlap.

23  *See Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) (denying first-to-

24

25  [13] In particular, it is likely that by filing in Pennsylvania, Defendants were seeking to avoid the precedential value that the decision in *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 1195,

26  1203 (N.D. Cal. 2004), would have on this Court.  *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990) (finding avoidance of adverse rulings may be sufficient evidence of

27  forum shopping and thus a basis for denying a first-to-file motion).

    [14] This cause of action has now been dismissed by the Pennsylvania Court with leave to amend.

28  Opsahl Decl. ¶ 33.

1    file motion where issues in two cases were distinct and not identical).

2          Finally, in terms of chronology, the Pennsylvania action was filed a mere day before this

3    one, and then, only because of Defendants' bad faith negotiations, forum shopping, and

4    anticipatory litigation conduct—all reasons recognized by the Ninth Circuit to deny a first-to-file

5    motion. *Alltrade*, 946 F.2d at 628.[15]

6          ### D.    There Is No Rule 9(b) Requirement For Claims Under 17 U.S.C. § 512(f)

7          With no citation to caselaw, statutory language, or legislative history, Defendants ask this

8    Court to ignore the long standing rule of notice pleading and hold that the "particularity" pleading

9    rule of Fed. R. Civ. P. 9(b) should somehow apply to claims for knowing misrepresentations under

10   17 U.S.C. § 512(f).  Defendants provide no citation because there is no support for Defendants'

11   novel construction of Section 512(f).  Indeed, Rule 9(b) has never been applied to any claim under

12   the Copyright Act, let alone Section 512(f) claims. One searches the language of Section 512(f) in

13   vain for any requirement that a plaintiff demonstrate an "intent to defraud" or other facts that

14   would necessarily constitute fraud.  *See generally Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

15   1106 (9th Cir. 2003).

16         Not only has it never been done before, it is also incorrect and would defeat the purposes of

17   Congress.  Essentially Defendants wish this Court to require any user injured by a DMCA notice to

18   have a copy of the improper notice prior to filing suit.  Plaintiffs will not always have the luxury of

19   having a copy of the takedown notice, and may only be informed that the takedown took place.

20   *See e.g.* Complaint, Ex. C.  To hold as Defendants suggest would place an unnecessary barrier to

21   effectuating the purposes of the DMCA's misuse provision and frustrated Congress' purpose.

22         ### E.    Defendants Cannot Move To Dismiss The Complaint Under Rule 12(B)(6) By
            Disagreeing With The Facts As Alleged

23
24         Finally, Defendants move to dismiss the Complaint by disagreeing with its facts.  However,

25   such agreements are an improper basis for a motion under Fed. R. Civ. P. 12(b)(6).  *See* Section

---

26   [15] Yet another exception to the first-to-file rule is when "the balance of convenience weighs in
     favor of the later-filed action." *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D.Cal. 1994).  This

27   is analogous to the "convenience of parties and witnesses" under a transfer of venue motion, 28
     U.S.C. § 1404(a). *Med-Tec Iowa, Inc. v. Nomos Corp.*, 76 F.Supp.2d 962, 970 (N.D.Iowa 1999);

28   *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 133 (S.D.N.Y. 1994).

III.C, *supra*. Specifically, Defendants contend that they did not send a takedown notice pursuant to 17 U.S.C. § 512, that their statement regarding infringement was not communicated knowingly, and that they were instead both true and made in good faith. Motion at 16, 22, 24. All three of these arguments are merely different ways of contesting the facts of this case as alleged and therefore improper.

### F. Sapient Has Properly Pled The Knowledge Standard For 512(F) Claims Under *Rossi* And *Diebold*

Defendants, in passing, contend that Sapient has failed to plead "actual knowledge of a material misrepresentation." Motion at 20. This is both untrue and an inaccurate statement of the proper legal standard in Section 512(f) cases.

First and foremost, Sapient *has* pled actual knowledge. Sapient specifically alleges that "Defendants knew…that that the NOVA video did not infringe any of their copyrights on the date they sent their DMCA complaint to YouTube." Complaint ¶ 20. The allegation of actual knowledge can hardly be more plain.

Moreover, Defendants misstate the relevant legal standard established by Section 512(f). In *Online Policy Group v. Diebold, Inc.*, 337 F.Supp.2d 1195 (N.D.Cal. 2004), Judge Fogel explained that, for purposes of Section 512(f), "'[k]nowingly' means that a party actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations" when it claimed that the targeted content was infringing. *Id.* at 1204. Accordingly, Sapient's complaint also alleges that "Defendants … should have known if they acted with reasonable care or diligence that the NOVA video did not infringe any of their copyrights on the date they sent their DMCA complaint to YouTube." Complaint ¶ 20.

In attacking this allegation, Defendants ignore Judge Fogel's holding in *Diebold*, contending instead that a subjective belief that activity is infringing, no matter how unreasonable, acts as a complete shield against Section 512(f) liability. Motion at 19-20 ("If a party asserts a takedown request that is subjectively in good faith, then there is no liability."). That position would render Section 512(f) a dead letter and flout the legislative purpose behind the statute.

Congress made it clear that Section 512 was intended to "balance the need for rapid response to potential infringement *with the end-users legitimate interests in not having material removed without recourse.*" Sen. Rep. No. 105-190 at 21 (1998) (emphasis added). On Defendants' view, a copyright owner with delusions of grandeur would be free to issue DMCA takedowns to censor critics—in fact, the more sincerely held the delusion, the more censorial power the copyright owner could wield. This is not the law. *See Diebold*, 337 F.Supp.2d at 1204-05 (holding Diebold liable under Section 512(f) for its use of DMCA notices to censor leaked internal email archives because "no reasonable copyright holder could have believed" that the publication was infringing).

Nor does Defendants' citation to *Rossi v. MPAA,* 391 F.3d 1000 (9th Cir. 2004), rescue their argument. In *Rossi*, the Ninth Circuit examined whether and to what extent a copyright holder must conduct a *factual investigation* before sending a DMCA notice in order to meet the "good faith" standard required by the statue. In that case, Rossi operated a website that appeared to be a den of piracy, festooned with graphics associated with Hollywood movies and exhortations like "Join to download full length movies online now!" MPAA investigators concluded (incorrectly, as it happened) that Rossi's website was involved in infringement and issued a DMCA notice.

On appeal, Rossi argued that the MPAA investigators lacked sufficient information to form a "good faith belief" under Section 512(c)(3)(A)(v) that he was illegally infringing their copyrights and that they should have done a reasonable factual investigation to determine whether or not infringement was actually occurring. *Id.* at 1003. The *Rossi* court rejected this argument, holding instead that based on the statements Rossi had made on his website, there was a sufficient basis to conclude that infringement was occurring. *Id.* at 1005. Based on these apparent (but ultimately misleading) facts, the court held that the MPAA had a sufficient basis for its "good faith belief" and that such a belief need only be based on the actual subjective knowledge of the facts available, rather than on any further investigation. *Id.* at 1005-6.[16]

---

[16] *See also Dudnikov v. MGA Entm., Inc.*, 410 F.Supp.2d 1010, 1013 (D. Colo. 2005) (following *Rossi* and finding that DMCA notice sender met its burden of showing a sufficient factual basis to form the required good faith belief under 17 U.S.C. § 512(c)).

The *Rossi* court was not called upon to interpret the meaning of "knowingly" in Section 512(f) as applied to *the legal determination* of whether the challenged activity is or is not infringing, as in that case there was no dispute that the apparent facts, if they had proven to be true, would have constituted infringement. In the instant case, we have the opposite situation. Here, there is no dispute about the relevant *factual predicate* for Defendants' DMCA notice—the NOVA video clip is exactly what it purported to be. The question here goes to the *legal determination* regarding the infringing or noninfringing nature of the video. On that question, Judge Fogel struck the correct balance in *Diebold*—a defendant's subjective belief standing alone should not strip those who are engaging in noninfringing uses of copyrighted material of their Section 512(f) protections.

## V.    CONCLUSION

For the reasons stated above, this Court should deny the motion to dismiss or transfer Sapient's claims.

DATED: November 15, 2007

By _____/s/_____
    Kurt Opsahl, Esq.
    Jason Schultz, Esq.
    Corynne McSherry, Esq.
    Marcia Hofmann, Esq.

ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA  94110
Telephone:  (415) 436-9333
Facsimile:  (415) 436-9993

Attorneys for Plaintiff
BRIAN SAPIENT