1
2
3
4
5
6
7
8               IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  JOHN DOE A/K/A BRIAN SAPIENT,           No   C 07-2478 VRW

12          Plaintiff,                          ORDER

13          v

14  URI GELLER and EXPLOROLOGIST,
    LTD,
15
            Defendants.
16  _____/

17

18

19          This dispute concerns the copyright infringement takedown

20  provisions under the Digital Millennium Copyright Act ("DMCA").

21  See 17 USC § 512(f) (2000).  Plaintiff claims that defendants

22  Explorologist, Ltd ("Explorologist") and Uri Geller ("Geller")

23  knowingly misrepresented to the YouTube file-sharing company that

24  one of plaintiff's video postings infringed defendants' copyrights.

25  17 USC § 512(f).  Plaintiff seeks damages from the alleged

26  misrepresentation, as well as a declaratory judgment of

27  noninfringement.  Doc #1.  Defendants respond with a motion to

28  dismiss.  Doc ##24, 25.  Defendants argue that the court lacks

1

subject matter jurisdiction and personal jurisdiction because the takedown notice that was sent to YouTube in San Bruno, California, was transmitted from outside the United States.  Defendants also move to dismiss on the grounds that the complaint's allegations surrounding the content of the takedown notice are insufficient under FRCP 9(b) and FRCP 8(a).  Lastly, defendants move to transfer venue to the Eastern District of Pennsylvania, where a related action is proceeding.  For the reasons set forth below, defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.

I

The YouTube internet video website is an entirely user-driven medium.  Anyone with access to the internet can sign up for a YouTube account and upload any video file to YouTube's servers so that the file may be accessed and viewed anywhere in the world, all for free.  For instance, a family might post a video of a child's soccer game in California so that grandparents may view it in Illinois.  Or a pair of young writers might write, film and produce their own television show and broadcast the episodes in serial form online, as in the case of the show "lonelygirl15," which drew millions of viewers on YouTube.  See Virginia Heffernan and Tom Zeller, Well, It Turns Out That Lonelygirl Really Wasn't, NY Times C1 (Sept 13, 2006).  Politicians, social activist organizations and nonprofit groups use YouTube to spread their messages.  See Jose Antonio Vargas, YouTube Creates Issues Debate, Wash Post (Aug 8, 2007), at http://blog.washingtonpost.com/ the-trail/2007/08/08/ youtube_creates_issues_debate.html (last visited Dec 4, 2007); Moises Naim, The YouTube Effect, Foreign Policy (Jan/Feb 2007), at

http://www.foreignpolicy. com/story/cms.php?story_id=3676 (last
visited Dec 4, 2007); Yinka Adegoke, <u>Nonprofits turn to YouTube to
raise awareness, funds</u>, Reuters UK (Oct 19, 2007), at
http://uk.reuters.com/article/homepageCrisis/idUK119280972697._CH_.
242020071019 (last visited Dec 4, 2007).  By nearly eliminating the
cost of mass media distribution, YouTube offers its users
unparalleled opportunities for free expression.  See Richard Waters
and Kevin Allison, <u>How to set a course for a shooting star</u>,
Financial Times (Oct 8, 2006), at http://www.ft.com/cms/s/0/
7261e5de-56fc-11db-9110-0000779e2340.html (last visited Dec 4,
2007).

        But because digital content is so easy to generate, the
potential for copyright and trademark violations is enormous.  See
Waters and Allison, supra.  Claiming fair use, a YouTube user might
post a homemade video that takes scenes from his favorite movie and
sets them to his favorite song, using both without permission.
See, for example, <u>My Body is a Cage</u>, at http://www.youtube.com/
watch?v=Pyp34v6Lmcc (mixing the climactic scene from Sergio Leone's
<u>Once Upon a Time in the West</u> with the Arcade Fire's <u>My Body is a
Cage</u>) (garnering over 550,000 hits as of Jan 29, 2008).  More
troublingly, a YouTube user might film his favorite musician's live
performance and post the footage on YouTube, potentially
discouraging other fans from purchasing the musician's live
performance DVD.  YouTube does not actively monitor the content of
the postings on its website.

        To address these and other concerns, Congress passed the
DMCA in 1998.  17 USC § 512 (2000).  Section 512(c) lays out a
detailed process allowing a copyright owner who observes infringing

content on a website like YouTube to have the content taken down.
The copyright owner must send a notification to YouTube ("takedown
notice") identifying the offending video and asserting under
penalty of perjury that the sender is the copyright owner and has a
good faith belief that the video infringes the sender's copyrights.
17 USC § 512(c)(3).  YouTube then must remove the material from its
servers or face infringement liability itself.  17 USC
§ 512(c)(1)(C).  The infringing user might also suffer penalties
under YouTube's terms of use, such as suspension of his account.
See YouTube Terms of Use ¶7, at http://www.youtube.com/t/terms
(last visited Dec 4, 2007).  Conversely, copyright owners who abuse
the takedown procedure are subject to liability.  At issue in this
case is the misrepresentation provision of the DMCA, which
provides, in relevant part:

> Any person who knowingly materially misrepresents [in a
> takedown notice to an internet service provider] * * *
> that material or activity is infringing * * * shall be
> liable for any damages, including costs and attorneys'
> fees, incurred by the alleged infringer * * * who is
> injured by such misrepresentation[] as the result of the
> service provider relying upon such misrepresentation in
> removing or disabling access to the material or activity
> claimed to be infringing * * *.

17 USC § 512(f).

## II

Defendant Explorologist is a private company registered
in London, England.  Doc #1 at ¶5.  Defendant Geller is a resident
of England and a director and controlling shareholder of
Explorologist.  Doc #1 at ¶¶4, 6.  Geller is also a performer who
claims to have psychic powers such as the ability to bend spoons

4

with his mind.  Doc #1 at ¶14.  Plaintiff is John Doe AKA Brian Sapient ("Sapient") who, as part of his "controversial religious beliefs," is a member of the "Rational Response Squad," which is committed to "debunking what it maintains are irrational beliefs and theories."  Doc #1 at ¶¶3, 12.  As part of that mission, plaintiff "rel[ies] on YouTube to reach thousands of audience members and promote [his] activist messages and campaigns online."  Doc #1 at ¶12.  Plaintiff uses the alias "Brian Sapient" because "he receives a substantial amount of abusive correspondence, including threats of physical harm" due to his beliefs.  Doc #1 at ¶3.  Given his attention to "the ongoing debate between evolution and creationism" (see Doc #30 at 2), plaintiff's choice of "Sapient" as a pseudonym is presumably a reference to evolutionary taxonomy, or relatedly, is a derivative of *sapientia*, Latin for wisdom.

Plaintiff eventually set his sight on Geller.  On November 15, 2006, plaintiff uploaded a video clip (the "NOVA video") to YouTube.  The video originally aired on the NOVA television program and features an illusionist named James Randi challenging Geller's powers.  Doc #1 at ¶¶13-14.  The NOVA video includes "three seconds" of another video clip in which a man named Dr C J Hughes describes Geller's asserted psychic powers ("Hughes clip").  Doc #1 at ¶14.

It is that second clip – the Hughes clip within the NOVA video – that prompted the instant dispute.  Explorologist owns the copyright to the Hughes clip.  Doc #1 at ¶14.  Plaintiff alleges that on March 23, 2007, an agent of defendants sent YouTube a takedown notice identifying plaintiff's post as infringing and

demanding that the video be removed.  Doc #1 at ¶15.  Later that day, YouTube informed plaintiff that the NOVA video had been flagged and removed in response to a copyright infringement takedown notice from Explorologist.  Doc #1 at ¶16.  YouTube suspended plaintiff's account for more than two weeks, during which time all his posted videos were unavailable.  Doc #1 at ¶17.

On May 7, 2007, Explorologist filed a complaint in the Eastern District of Pennsylvania, where plaintiff resides.  See Doc #29 (Notice of Pendency of other Action or Proceeding).  That complaint alleges that by posting the NOVA video, Sapient committed copyright infringement under British law, commercial disparagement and appropriation of name or likeness.  See Doc #26 Exh 5.

On May 8, 2007, plaintiff filed the instant complaint.  Count I of the complaint alleges that defendants "knowingly materially misrepresent[ed]" to YouTube in the takedown notice that plaintiff's posting infringed defendants' copyrights.  Doc #1 at ¶¶18-23; 17 USC § 512(f).  Plaintiff alleges that his posting of the NOVA video does not infringe defendants' copyrights and therefore the takedown notice was a misrepresentation.  Doc #1 at 19.  Plaintiff then alleges that defendants "knew or should have known" that the video was noninfringing and that defendants "did not act with reasonable care or diligence before sending" the takedown notice."  Doc #1 at ¶20.  Count II seeks a declaratory judgment that plaintiff's video is noninfringing under the First Amendment and under United States copyright law.  Doc #1 at ¶¶24-27.  Plaintiff seeks damages, declaratory and injunctive relief, attorneys' fees and costs.

6

### III

In addition to defendants' challenges on the merits, defendants argue that the court lacks both subject matter and personal jurisdiction.  Because the court agrees that this case should be dismissed for lack of personal jurisdiction, defendants' other arguments need not be addressed.  The Supreme Court has held that if "a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." Ruhrgas AG v Marathon Oil Co,  526 US 574, 588 (1999) (footnote omitted); consider Sinochem Intl Co v Malaysia Intl Shipping Corp, 127 SCt 1184 (2007) (holding that a district court may address a *forum non conveniens* plea before considering personal jurisdiction or subject matter jurisdiction).

No federal court has ever addressed subject matter jurisdiction under § 512(f), and the subject matter jurisdiction issue in this case is complex.  Defendants argue the court lacks subject matter jurisdiction because defendants' act of sending the YouTube takedown notice occurred in England, where the fax and email were sent.  That fact is significant because United States copyright laws do not apply extraterritorially.  See Subafilms, Ltd v MGM-Pathe Comm'ns Co, 24 F3d 1088, 1094 (9th Cir 1994).  But copyright law is especially unsettled when it comes to cross-border communications.  Compare Allarcom Pay Television, Ltd v Gen Inst Corp, 69 F3d 381, 387 (9th Cir 1995) (finding no jurisdiction over a television broadcast from the United States to Canada), with Los

**7**

<u>Angeles News Service v Reuters Television Intl, Ltd</u>, 149 F3d 987 (9th Cir 1998) (finding jurisdiction over a television broadcast from the United States to Africa); see William Patry, <u>Choice of Law and International Copyright</u>, 48 Am J Comp L 384, 462 n362 (2000) (noting the discrepancy between <u>Allarcom</u> and <u>Reuters</u>); Andreas P Reindl, <u>Choosing Law in Cyberspace: Copyright Conflicts on Global Networks</u>, 19 Mich J Int'l L 799, 823 n84 (1998) (criticizing <u>Allarcom</u> but noting that the European Community has adopted that approach); see also <u>National Football League v PrimeTime 24 Joint Venture</u>, 211 F3d 10, 13 (2d Cir 2000) (rejecting <u>Allarcom</u> and holding that "each step" in the transmission procedure can give rise to jurisdiction).  It is unclear how that line of precedent would apply to cross-border communications such as defendants' fax and email.  Plaintiff suggests that copyright "authorization" law, which permits jurisdiction over foreign acts that authorize violations in the United States, is instructive, but that body of case law is inapposite.  Authorization law and other species of vicarious infringement depend on the particular derivative relationship between direct and indirect copyright infringement. See <u>Subafilms</u>, 24 F3d at 1090-93.  Here, however, plaintiff alleges neither direct nor indirect infringement.  Overall, copyright law does not provide a satisfactory answer whether United States courts have jurisdiction over cross-border communications in § 512(f) suits.

In fact, as an alleged violation of § 512(f) is not a copyright claim, copyright law may be of little help.  Plaintiff raises a misrepresentation claim.  Accordingly, it may be improper to import jurisdiction principles from one specific context – the

creation and regulation of property rights – to a very different context for which those principles were not designed.  See Reindl, supra, at 824.  Instead, perhaps misrepresentation law rather than copyright law should control the subject matter jurisdiction analysis.

Even so, treating this case as an ordinary tortious misrepresentation case does not much clarify matters.  Following common law tort principles, the court might be inclined to rule that the situs of the act is the place where a fax or email was received, not sent.  But the best support for that statement is found not in any recent, binding precedent but rather in the First Restatement of Conflict of Laws, published in 1934.  See Restatement of Conflict of Laws § 377 (1934) (defining the "place of wrong" as "the state where the last event necessary to make an actor liable for an alleged tort takes place"); see also cmt a, illus 5, 7.  The court might analogize to other federal misrepresentation statutes (see Bersch v Drexel Firestone, Inc, 519 F2d 974, 988-89, 991 (2d Cir 1975) (securities fraud); 13 USC § 1343 (wire fraud)), but these too appear to provide scant guidance.

Suffice it to say, subject matter jurisdiction is neither clear nor definitive.  Accordingly, the court is "convinced that the challenge to the court's subject-matter jurisdiction is not easily resolved and that the alternative ground [of personal jurisdiction] is considerably less difficult to decide."  Cantor Fitzgerald, LP v Peaslee, 88 F3d 152, 155 (2d Cir 1996), cited in Ruhrgas, 526 US at 588.

IV

Defendants argue that the court lacks personal jurisdiction over both Explorologist and Geller because each has insufficient minimum contacts with California.  Plaintiff responds that the court has specific jurisdiction over defendants arising out of the takedown notice sent to YouTube in California.

A

In a motion challenging personal jurisdiction, the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists.  See Data Disc, Inc v Systems Tech Assocs, Inc, 557 F2d 1280, 1285 (9th Cir 1977).  When the motion to dismiss constitutes a defendant's initial response to the complaint, the plaintiff need only make a prima facie showing that personal jurisdiction exists.  See Data Disc, 557 F2d at 1285.

Sapient does not raise a general jurisdiction argument and asserts only that the court may exercise specific jurisdiction over defendants.  Under California law, "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."  Cal Civ Code § 410.10.  Given the broad reach of California's long-arm statute, the court need only satisfy itself that its exercise of jurisdiction does not exceed constitutional due process limitations.  See Haisten v Grass Valley Med Reimbursement Fund, Ltd, 784 F2d 1392, 1396 (9th Cir 1986).

The Ninth Circuit has established a three-part test for determining when specific jurisdiction may be exercised:

10

1

2       1.    The nonresident defendant must do some act or consummate
some transaction with the forum or perform some act by

3            which he purposefully avails himself of the privilege of
conducting activities in the forum, thereby invoking the

4            benefits and protections of its laws.

5       2.    The claim must be one which arises out of or results from
the defendant's forum-related activities.

6

7       3.    Exercise of jurisdiction must be reasonable.

8    <u>Data Disc</u>, 557 F2d at 1287.

9          The Ninth Circuit has since expanded the first prong,

10   also known as the purposeful availment or purposeful direction

11   requirement, "apply[ing] different purposeful availment tests to

12   contract and tort cases." <u>Ziegler v Indian River County</u>, 64 F3d

13   470, 473 (9th Cir 1995); see <u>Schwarzenegger v Fred Martin Motor Co</u>,

14   374 F3d 797, 802-03 (9th Cir 2004).  Purposeful availment in tort

15   cases is analyzed under the effects test from <u>Calder v Jones</u>, 465

16   US 783 (1984):

17

18       As we have previously recognized, <u>Calder</u> stands for the
proposition that purposeful availment is satisfied even

19       by a defendant "whose only 'contact' with the forum state
is the 'purposeful direction' of a foreign act having

20       effect in the forum state."  Based on these
interpretations of <u>Calder</u>, the "effects" test requires

21       that the defendant allegedly have (1) committed an
intentional act, (2) expressly aimed at the forum state,

22       (3) causing harm that the defendant knows is likely to be
suffered in the forum state.

23

24   <u>Dole Food Co, Inc v Watts</u>, 303 F3d 1104, 1111 (9th Cir 2002)

25   (internal citations omitted).  Personal jurisdiction may flow from

26   a single contact with the forum state if the claim "arise[s] out of

27   that particular purposeful contact of the defendant with the forum

28   state."  <u>Lake v Lake</u>, 817 F2d 1416, 1421 (9th Cir 1987).

11

1    Plaintiff argues that defendants' single act of sending

2 the takedown notice to YouTube in California is sufficient to

3 establish personal jurisdiction in California courts.

4

5                                    B

6    The court has its doubts whether plaintiff can

7 demonstrate "purposeful direction" into California under the first

8 prong of the jurisdiction test.  Although defendants allegedly sent

9 the takedown notice to YouTube in California, Sapient resides in

10 Pennsylvania.  Sapient is correct that there is no presumption that

11 a plaintiff is harmed in his domiciliary only (see Keeton v Hustler

12 Magazine, Inc, 465 US 770 (1984) (holding that a New Hampshire

13 court could exercise personal jurisdiction in a libel case though

14 plaintiff resided in New York and defendant resided in Ohio)), but

15 the only activity that occurred in California was YouTube's act of

16 disabling access to plaintiff's video.  Other than by reciting the

17 language of § 512(f), plaintiff has not explained how the removal

18 of the video is an injury "sufficient" to establish personal

19 jurisdiction over defendants in California.  See Yahoo! v La Lique

20 Contre Le Racisme, 433 F3d 1199, 1207 (9th Cir 2006) (rejecting the

21 "brunt of the harm" test in favor of the less-restrictive

22 "jurisdictionally sufficient amount of harm" test).  Instead,

23 plaintiff's claimed injuries are more likely to be suffered in

24 Pennsylvania.  See Bancroft & Masters v Augusta Natl Inc, 223 F3d

25 1082 (9th Cir 2000) (finding personal jurisdiction in California

26 because the Georgia defendant mailed a letter to a domain name

27 registry in Virginia thereby interfering with the domain name

28 rights of plaintiff, who lived in California).

1          The court does not rest its decision on purposeful

2   direction grounds, however, because that body of precedent does not

3   apply easily to the facts here.  Plaintiffs rarely claim an injury

4   in a state other than their home state, and plaintiffs rarely

5   allege the kind of metaphysical internet free speech injuries or

6   electron-based injuries that Sapient alleges here.  See Doc #1 at

7   ¶¶17, 23, 26.  The cases cited by both parties are all

8   distinguishable easily on one or both of those grounds.  See

9   Keeton, 465 US 770; Calder, 465 US 783; Menken v Emm, 503 F3d 1050

10  (9th Cir 2007); Yahoo!, 433 F3d 1199; Harris Rutsky & Co Ins

11  Services, Inc v Bell & Clements Ltd, 328 F3d 1122 (9th Cir 2003);

12  Dole Foods, 303 F3d 1104; Bancroft & Masters, 223 F3d 1082; Wien

13  Air Alaska, Inc v Brandt, 195 F3d 208 (5th Cir 1999); Resnick v

14  Rowe, 283 F Supp 2d 1128 (D Hawaii 2003); Cody v Ward, 954 F Supp

15  43 (D Conn 1997).  The court has no affirmative, binding precedent

16  and no clear guidance.  Accordingly, the court declines to rule on

17  the "purposeful direction" prong of the jurisdiction test, either

18  under the Calder effects test (as plaintiffs urge) or under the

19  theory that defendants' tortious conduct occurred in California

20  (consider Knipple v Viking Communications, Ltd, 236 Conn 602, 610

21  (1996) (holding that "[f]alse representations entering Connecticut

22  by wire or mail constitute tortious conduct in Connecticut")).

23

24                              C

25          Instead, Sapient's case for personal jurisdiction

26  flounders immediately once the court considers the third prong of

27  the jurisdiction test, which is that jurisdiction must be

28  reasonable.  See FDIC v British-American Ins Co, 828 F2d 1439, 1442

(9th Cir 1987) (declining to rule on purposeful availment in light of the conclusion that the exercise of jurisdiction would be unreasonable).

Defendants have the burden of making a "compelling case" that exercise of jurisdiction would be unreasonable; in other words, that it would not comport with fair play and substantial justice. See Schwarzenegger, 374 F3d at 802. Defendants must show that any asserted unfairness could not be alleviated by less restrictive means such as conflict of law rules or an accommodating venue transfer. See Burger King Corp v Rudzewicz, 471 US 462, 476-78 (1985). Jurisdiction is reasonable if "under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense in a distant forum." FDIC, 828 F2d at 1442.

The Ninth Circuit has set out seven factors to be weighed in evaluating the reasonableness of exercising personal jurisdiction in a particular case:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs;
>
> (2) the burden on the defendant of defending in the forum;
>
> (3) the extent of conflict with the sovereignty of the defendants' state;
>
> (4) the forum state's interest in adjudicating the dispute;
>
> (5) the most efficient judicial resolution of the controversy;
>
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
>
> (7) the existence of an alternative forum.

<u>Harris Rutsky</u>, 328 F3d at 1132; see <u>Insurance Co of North Am v</u>
<u>Marina Salina Cruz</u>, 649 F2d 1266, 1270 (9th Cir 1981) ("There is no
mechanical or quantitative test for jurisdiction under the
<u>International Shoe</u> reasonableness standard, and we shall not
attempt to list all the factors that might, in a different case, be
part of an assessment of the reasonableness of subjecting a
defendant to jurisdiction.  For purposes of the present case we
conclude that the following seven factors are relevant * * *.").
The seven factors must be balanced against one another to determine
reasonableness.  See <u>Roth v Garcia Marquez</u>, 942 F2d 617, 623, 625
(9th Cir 1991).  In this case, each factor suggests that
jurisdiction is unreasonable.

1

The extent of defendants' "purposeful interjection" into
California was not substantial, comprising only the single takedown
notice sent to YouTube.  "Even if there is sufficient
'interjection' into the state to satisfy the [purposeful availment
prong], the degree of interjection is a factor to be weighed in
assessing the overall reasonableness of jurisdiction under the
[reasonableness prong].* * *  The smaller the element of purposeful
interjection, the less is jurisdiction to be anticipated and the
less reasonable is its exercise."  <u>Insurance Co of North Am</u>, 649
F2d at 1271, quoted in <u>Core-Vent Corp v Nobel Industries AB</u>, 11 F3d
1482, 1488 (9th Cir 1993).  In <u>Core-Vent</u>, the Ninth Circuit found
defendant's libelous article circulated in California to be an
"attenuated" contact with California - even though defendants
"allegedly intended their actions to cause harm in California" -

15

and the court ruled that the purposeful interjection factor weighed in defendants' favor.  <u>Core-Vent</u>, 11 F3d at 1487, 1488.  Here, defendants' takedown notice is similar to the article in <u>Core-Vent</u> because it was a single communication sent from Europe.  In fact, defendants' contacts with California are even more attenuated because, although the takedown notice was sent to California, it was not aimed at any California resident.  Thus, whether defendants intended to create an effect in California or even if defendants committed a tort in California, defendants' purposeful interjection into California is not extensive.  Accordingly, this factor weighs against personal jurisdiction.

2

The second factor – the burden on the defendants – weighs against jurisdiction slightly.  "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." <u>Asahi Metal Industry Co v Superior Court</u>, 480 US 102, 114 (1987). The use of an agent in the United States might alleviate a foreign defendant's burden (see <u>Core-Vent</u>, 11 F3d at 1488), but defendants do not have such an agent.  And there is no indication that defendants or their representatives "frequently travel to California on business." <u>Harris Rutsky</u>, 328 F3d at 1132-33; see Doc #33-2 (discussing defendants' travel in the United States and Europe).  On the other hand, modern technology has reduced the burden of litigating in another country (see <u>Sinatra v National Enquirer</u>, 854 F2d 1191, 1199 (9th Cir 1988)), and defendants'

16

personal involvement with the litigation is not likely to be extensive.  Explorologist's claim of undue burden is far less compelling than Geller's, of course, because Explorologist has already sued Sapient in Pennsylvania.  Litigation in California would force Explorologist to fight a two-front war in the United States, but much of the burden of litigating in the United States (such as selecting and monitoring American counsel) has already been done.  Because of the Pennsylvania lawsuit, defendants' burden of litigating in California is not overwhelming, but it is a burden nevertheless, and this factor weighs against jurisdiction slightly.

3

"[L]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." Sinatra, 854 F2d at 1199.  The court should not dwell upon this consideration.  See Harris Rutsky, 328 F3d at 1133, citing Gates Learjet Corp v Jensen, 743 F2d 1325, 1333 (9th Cir 1984) ("If [this factor were] given controlling weight, it would always prevent suit against a foreign national in a United States court.").

The court may presume that England has a sovereign interest in adjudicating a claim against a British corporation and a British resident.  See Harris Rutsky, 328 F3d at 1133.  Moreover, the video clip at the heart of the dispute was filmed in England (see Doc #26 Exh 5 at ¶7) and features Dr Hughes, whom defendants claim is British (see Doc #26 Exh 2).  Defendants' lack of an agent in the United States is also relevant to sovereignty considerations.  See Core-Vent, 11 F3d at 1489; Roth, 942 F2d at

623-24.  Accordingly, this factor weighs against jurisdiction slightly.

4

The fourth factor - the forum state's interest in adjudicating the dispute - weighs against personal jurisdiction. Sapient resides in Pennsylvania, not California.  "Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished." Asahi, 480 US at 114.  Sapient alleges no violations of California law.  See FDIC, 828 F2d at 1444.  YouTube is a California company but is not a party to this litigation.  California has little interest in the outcome of this case.  See Corporate Inv Bus Brokers v Melcher, 824 F2d 786, 791 (9th Cir 1987).

Sapient's only argument to the contrary is that "California has an abiding interest in protecting YouTube videos from improper takedown notices" (see Doc #30 at 12 n7), citing the free speech clause in the California constitution and a California statute banning the use of lawsuits to chill free speech.  See Cal Const art I, § 2(a); Cal Code Civ Proc § 425.16(a).  Those provisions apply to California residents, not Pennsylvania internet users, inanimate computer files or lawsuits filed by British residents against a Pennsylvania resident in Pennsylvania federal court asserting claims under British law.  California is not the worldwide regulator of free speech in the digital age.

The Supreme Court held in Asahi that courts violate due process when they adjudicate lawsuits with no connection to the forum state.  See 480 US at 113-16.  In Asahi, a Taiwanese auto

1  parts manufacturer sued a Japanese auto parts manufacturer in
2  California state court, seeking indemnification arising out of a
3  motorcycle accident in Solano County.  480 US at 105-06.  The Court
4  held, in a near-unanimous section of a notoriously splintered
5  opinion, that jurisdiction over the Japanese defendant was
6  unreasonable even though the key factual event – the motorcycle
7  accident – occurred in California.  The Court reasoned that
8  California's interest in enforcing its automobile safety standards
9  was too attenuated and "overly broad" when applied to non-
10 California residents in a claim that did not affect safety
11 directly.  480 US at 114-15.  Here, neither party is a California
12 resident, and plaintiffs have not shown that the outcome of this
13 lawsuit will impair the free speech of Californians.

14         Plaintiff's case for jurisdiction leads to unreasonable
15 (even if unintended) consequences.  If plaintiff's theory of
16 jurisdiction were upheld, then the Northern District of California
17 could assert jurisdiction over every single takedown notice ever
18 sent to YouTube or any other company in Silicon Valley.  Citizens
19 around the world – from Indonesia to Italy, Suriname to Siberia –
20 could all be haled into court in the San Francisco Bay area,
21 California, USA, for sending off a fax claiming that a video clip
22 is infringing.  Federal courts sitting in California could assert
23 personal jurisdiction over foreign defendants in wholly foreign
24 disputes.  Consider, for example, Erik Jensen, Boy dupes YouTube to
25 delete videos, Sydney Morning Herald (Apr 14, 2007), at
26 http://www.smh.com.au/news/technology/boy-dupes-youtube-to-delete-v
27 ideos/2007/04/13/1175971361981.html (last visited Jan 3, 2008)
28 (reporting that a 15-year-old boy in Australia pretended to

1   represent the Australian Broadcasting Corporation and "succeeded in

2   having more than 200 clips removed" from YouTube using bogus

3   takedown notices).  Such broad jurisdiction, premised solely on the

4   happenstance that many internet companies that are not even parties

5   to § 512(f) litigation have offices in Silicon Valley, is

6   unreasonable.  The Northern District of California is not an

7   international court of internet law.

8        California's interest in Sapient's case is "slight" (see

9   Asahi, 480 US at 114), and this factor weighs against jurisdiction.

10

11                        5

12        The fifth factor - the most efficient judicial resolution

13   of the controversy - weighs against jurisdiction.  In this case,

14   the most efficient resolution of the controversy is in the Eastern

15   District of Pennsylvania.  Count II of plaintiff's complaint, which

16   seeks a declaratory judgment of noninfringement, is the mirror

17   image of Explorologist's copyright infringement claim pending in

18   Pennsylvania.  Explorologist Ltd v Sapient, No 07-1848 LP (E D Pa).

19   Judge Pollak has already denied a motion to dismiss for lack of

20   subject matter jurisdiction and has granted in part and denied in

21   part a 12(b)(6) motion to dismiss.  Doc #31 Exh V.  Discovery is

22   underway.  See No 07-1848 Doc #42, 44.  Judge Pollak requested

23   additional briefing on various intricacies of British copyright

24   law, and Sapient responded with a motion for partial summary

25   judgment on the British copyright law claim.  See No 07-1848 Doc

26   #45.  Many third parties including the American Association of Law

27   Libraries, the American Library Association and Google have moved

28   for leave to file an amicus brief in support of Sapient.  See No

07-1848 Doc #46.  Duplication here of those complicated proceedings would be a waste of the parties', the attorneys' and the court's resources.  And count I of plaintiff's complaint here becomes moot if Explorologist prevails on its infringement claim in Pennsylvania.  Accordingly, Sapient's claims can be resolved most efficiently by the court that is already familiar with the underlying facts.

This factor also requires the court to evaluate where the witnesses and evidence are likely to be located.  See Core-Vent, 11 F3d at 1489.  Plaintiff claims vaguely that he will need to call YouTube employees as witnesses, but he neither identifies any specific witnesses nor describes the subject matter of their testimony – and its relevance or importance to this lawsuit - with any reasonable specificity.  See Doc #30 at 17; compare Carolina Casualty Co v Data Broadcasting Corp, 158 F Supp 2d 1044, 1049 (N D Cal 2001) (Walker, J).  And in any event, the convenience of witnesses is "no longer weighed heavily given the modern advances in communication and transportation."  Panavision Intl, LP v Toeppen, 141 F3d 1316, 1323 (9th Cir 1998).

6

California does not appear to be important to the plaintiff's interest in convenient and effective relief.  In fact, quite the opposite: "[N]o doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference."  Roth, 942 F2d at 624.  Sapient is already litigating in his home state against Explorologist regarding the NOVA video.  Sapient "has not shown that the [claim] cannot be

1    effectively remedied in [Pennsylvania] or [England]."   <u>Sinatra</u>, 854

2    F2d at 1200.   Sapient fails to articulate any concerns that paint

3    California as "important" to his claim.

4        The court acknowledges that internet users in Sapient's

5    position will not always be able to establish jurisdiction in their

6    home states (or in the United States) over defendants in § 512(f)

7    cases.   The sender of a takedown notice may not know where the

8    target of the takedown notice lives, and therefore the sender does

9    not purposefully direct his actions at any specific individual

10   state.   Hence, in some cases, California (the state to which the

11   takedown notice is sent) might be the only plausible state in which

12   to bring a § 512(f) claim over a foreign defendant.   The court need

13   not decide the implications of that fact here because Sapient is

14   already a party to related litigation in his home state.

15

16                                    7

17       The last factor – the existence of an alternative forum –

18   also weighs against jurisdiction.   "The plaintiff bears the burden

19   of proving the unavailability of an alternative forum."   <u>Core-Vent</u>,

20   11 F3d at 1490.   Sapient has made no such showing that he would be

21   precluded from suing in Pennsylvania or England.   See <u>Harris</u>

22   <u>Rutsky</u>, 328 F3d at 1133-34.   "Doubtless [Sapient] would prefer not

23   to [litigate in England], but that is not the test."   <u>Roth</u>, 942 F2d

24   at 625; see <u>Core-Vent</u>, 11 F3d at 1490; <u>Sinatra</u>, 854 F2d at 1201.

25

26                                    8

27       The court's "balance" of the above factors weighs against

28   jurisdiction.   It is "unreasonable and unfair" for this court to

                                   **22**

assert jurisdiction over British residents in a suit brought by a
Pennsylvania resident over an allegedly tortious fax sent to a
third party in California.  See Asahi, 480 US at 116 ("Considering
the international context, the heavy burden on the alien defendant,
and the slight interests of the plaintiff and the forum State, the
exercise of personal jurisdiction by a California court over Asahi
in this instance would be unreasonable and unfair.").

     It is true that jurisdictional difficulties should "be
accommodated through means short of finding jurisdiction
unconstitutional," such as venue transfer.  Burger King, 471 US at
477 & n20.  That admonition is relevant if the issue is the
defendant's burden of litigating in the forum state.  See Burger
King, 471 US at 477 ("[A] defendant claiming substantial
inconvenience may seek a change of venue.").  Here, by contrast,
the glaring flaws in plaintiff's case for jurisdiction are
California's lack of an interest in this dispute and the lack of
any stopping point to this district's jurisdiction over foreign
defendants in § 512(f) cases.  Accordingly the court declines to
find jurisdiction and transfer venue to Pennsylvania.

     Accordingly, defendants have made a "compelling case"
that personal jurisdiction in the Northern District of California
is unreasonable.


                                V

     Plaintiff's attempt to establish personal jurisdiction
through physical service of process must fail.  Doc #30 at 13-15.
Defendants waived service of process, thereby mooting the effect of
any subsequent physical service in the state of California.  See

                               23

1  Fed R Civ P 4(d)(4) (2007) ("When the plaintiff files a waiver,

2  * * * these rules apply <u>as if a summons and complaint have been</u>

3  <u>served</u> at the time of filing the waiver.") (emphasis added).

4  Plaintiff advances no support for his theory of double service.

5

6                                      VI

7            The court concludes with three final notes.  First,

8  Sapient will suffer no actual prejudice as a result of the court's

9  ruling.  Sapient will be able to raise his § 512(f) claim against

10  Explorologist as a counterclaim in the Pennsylvania action.  See

11  Fed R Civ P 13(a), 13(f), 13(b); <u>AJ Indus, Inc v US Dist Court for</u>

12  <u>Central Dist of Cal</u>, 503 F2d 384, 387-89 (1974).  And although

13  Geller is not a party to that action, Sapient will be able to bring

14  his claims against Geller using either a regular jurisdiction

15  analysis or the federal long-arm statute.  See Fed R Civ P 4(k)(2).

16            Second, the court's ruling does not require a per se bar

17  against personal jurisdiction in California over foreign defendants

18  in § 512(f) cases.  In some instances, jurisdiction might be

19  appropriate and reasonable based on all the circumstances.  If a

20  defendant relies regularly and consistently on YouTube's takedown

21  procedures, then the purposeful direction or purposeful

22  interjection inquiries might be different.  Here, had defendants

23  never sued Sapient in the United States, or had they sued him in a

24  state other than his residence, then the analysis might be

25  different as well.  Vindication of plaintiffs' rights must be

26  weighed against defendants' interests in a fair trial and the

27  legitimacy of the judicial system (see <u>Asahi</u>, 480 US at 113), and

28  on the facts of this case, the balance tips in favor of defendants.

1      Third, the DMCA provides explicitly that internet users
2  such as Sapient who wish to rebut a takedown notice must consent to
3  the jurisdiction of a federal district court (see 17 USC
4  512(g)(3)(D)), but the statute does not require copyright owners
5  who send takedown notices (such as defendants here) to consent to
6  personal jurisdiction (see 17 USC 512(c)(3)).  That difference must
7  be viewed as intentional.  See <u>The Adeline</u>, 13 US 244, 253 (1815).
8  If that result seems asymmetrical and unfair, then the problem
9  should be resolved by Congress, not this court.

10

11                                 VI

12      Even assuming plaintiffs can demonstrate subject matter
13  jurisdiction and purposeful direction, personal jurisdiction over
14  the defendants would violate due process because jurisdiction would
15  not be "reasonable and just according to our traditional conception
16  of fair play and substantial justice * * *."  See <u>International</u>
17  <u>Shoe Co v State of Washington</u>, 326 US 310, 320 (1945).  Defendants'
18  motion to dismiss for lack of personal jurisdiction is GRANTED.

19

20      IT IS SO ORDERED.

21

22      _____

23      VAUGHN R WALKER

24      United States District Chief Judge

25

26

27

28

**25**